IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| LINDA M. KEITH,<br><br>     Plaintiff,<br><br> vs.<br><br>TOM TIDWELL, U.S. Forest Service<br>Chief, FAYE KRUEGER, Regional<br>Forester for the Northern Region of the<br>U.S. Forest Service, and THE UNITED<br>STATES FOREST SERVICE,<br><br>     Defendants. | CV 13–99–M–DWM<br><br><br>ORDER |

## INTRODUCTION

Plaintiff Linda M. Keith ("Keith") filed suit against the United States Forest Service and Tom Tidwell and Faye Krueger in their respective official capacities as U.S. Forest Service Chief and Regional Forester for the Northern Region of the U.S. Forest Service (collectively "Defendants"). Keith seeks to enjoin the Forest Service's approval of a Special Use Permit authorizing a transmission line upgrade in the Gallatin National Forest. Keith failed to comply with the statutory exhaustion requirements and her non-compliance is not excused. Consequently

1

the government must prevail.

## BACKGROUND

A transmission line owned by Northwestern Energy runs adjacent to Keith's 32-acre property near the mouth of Gallatin Canyon.  Northwestern Energy has proposed to upgrade this line from 69 kV to 161 kV ("the Jackrabbit Project"). The Jackrabbit Project would connect the existing Jackrabbit Substation located near Four Corners, west of Bozeman, Montana, to a new substation near Big Sky Meadow Village in Big Sky, Montana.  Of the 37-mile route, 16 miles cross into National Forest land.  For this portion, the Forest Service issued a Special Use Permit to Northwestern Energy to implement the upgrade.  Prior to doing so, the Forest Service issued a Draft Environmental Impact Statement ("EIS") for public comment and issued its Final EIS and Record of Decision on March 27, 2013.

On May 13, 2013, Keith filed an administrative appeal of the Final EIS and Record of Decision.  (Doc. 9-7.)  On May 21, 2013, prior to the issuance of the agency's decision on the appeal, Plaintiff filed a Complaint and Motion for Preliminary Injunction to enjoin the Forest Service's approval of the Project.  (*See* doc. 2.)  On May 24, 2013, the Forest Service dismissed Keith's appeal without review on the grounds that Plaintiff did not participate in the public comments process or demonstrate an ongoing interest in the project.  (Doc. 24-10.)

2

Defendants motion to dismiss for failure to exhaust administrative remedies is the issue that must be resolved.  (Doc. 22.)

## SUMMARY CONCLUSION

Defendants' motion to dismiss for failure to exhaust administrative remedies is granted.  Keith fails to show either compliance with the mandatory exhaustion statute or that her non-compliance should be excused.

## STANDARD

A decision to dismiss on the grounds of failure to exhaust, unlike a motion for summary judgment, is not on the merits.  *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).   In deciding such a motion, "the court may look beyond the pleadings and decide disputed issues of fact."  *Id.* at 1119-20.  "[T]he court has a broad discretion as to the method to be used in resolving the factual dispute." *Ritza v. Intl. Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir. 1988).)

## ANALYSIS

## I.     Keith failed to exhaust her administrative remedies.

### A.     Notice

To provide sufficient legal notice of a proposed project, the Forest Service

must: (1) provide notice of the opportunity to comment on a proposed action implementing a land and resource management plan; (2) determine the most effective timing for publishing the legal notice of the proposed action and the opportunity to comment; (3) promptly mail notice about the proposed action to any individual or organization who has requested it and to those who have participated in project planning; (4) publish a legal notice of the opportunity to comment on a proposed action; (5) accept all written and oral comments on the proposed action; and (6) identify all substantive comments.  36 C.F.R. § 215.5.

Here, the record indicates the Forest Service has satisfied all of these requirements.  During the scoping process for the EIS, the Forest Service sent notice to all of the landowners in the project area, and the list of landowners includes the plaintiff.  (*See* Waring Dec., Ex. A, doc. 24-1.)  The Forest Service also published notices in the local newspaper, (*id.* at Ex. C, doc. 24-3), and a notice of intent to prepare an EIS, (*id.* at Ex. D, doc. 24-4).  Keith alleges that she never received notice that the Forest Service was accepting comments on the Draft EIS and, therefore, she did not provide comments on the Draft EIS.  Although it is unclear whether Keith personally received initial notice of the project, the Forest Service fulfilled all of its duties to provide such notice.

### B.     Failure to Exhaust

Keith contends she exhausted her administrative remedies by filing an administrative appeal of the Final EIS and Record of Decision for the Jackrabbit Project.  Defendants contend that because Keith did not comment or otherwise express interest during the public comment period, she failed to meet the "appeal procedures established by the Secretary [of Agriculture]" as required by 7 U.S.C. § 6912(e).  Defendants are correct in their contention.

Section 6912(e) provides that: "a person shall exhaust all administrative appeal procedures established by the Secretary [of Agriculture] or required by law before the person may bring an action in a court of competent jurisdiction . . . ."  The administrative appeals process is limited, however, by 36 C.F.R. § 215.13, which states that only "[i]ndividuals and organizations who submit substantive written or oral comments during . . . the comment period . . . may file an appeal."  The Forest Service dismissed Keith's appeal on the grounds that she did not qualify to file an appeal because she did not participate during the public comment period.  (*See* doc. 24-10.)  Due to this procedural dismissal, the Forest Service did not review the contents of Keith's appeal.  (*See id.*)

Keith attempts to rely on the comments of others as providing the agency with proper notice of her concerns.  This Court has previously held that a plaintiff may not rely on third party comments to meet the requirements of the § 6912(e)

exhaustion statute.  *See Wildlands CPR, Inc. v. U.S. Forest Serv.*, 872 F. Supp. 2d
1064, 1072 (D. Mont. 2012).  The language of § 215.13 similarly prevents Keith
from relying on third party comments to support her standing to bring an
administrative appeal.  Section 215.13 specifically notes that only those
organizations and individuals that participated in the comments process may bring
an appeal.

Because the Forest Service did not look to the merits of Keith's appeal, it
did not have notice of her concerns.  As noted by Defendants, participation in the
comment period is an integral part of the process as it allows the agency to work
with commenters to make necessary changes from the Draft EIS to the Final EIS.
Due to Keith's lack of involvement prior to the appeals stage, the Forest Service
was not given any indication that the changes it made from the Draft EIS to the
Final EIS were insufficient or likely to be challenged.

Furthermore, Keith's use of the administrative appeals process does not
comport with the underlying purposes of administrative exhaustion.  Exhaustion
serves two main purposes: (1) it allows the agency to correct its own mistakes and
discourages disregard of agency procedures and (2) it promotes efficiency by
allowing claims to be resolved without resorting to litigation in federal court.
*Woodford v. Ngo*, 548 U.S. 81, 89 (2006).  "Proper exhaustion demands

6

compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.  As noted by the Supreme Court, "courts should not topple over administrative decisions unless the administrative body not only has erred, *but has erred against objection made at the time appropriate under its practice*." *Id.* at 90 (emphasis in original).

Keith not only failed to participate in what the regulations consider a necessary phase of the process, but she also failed to wait for the agency to consider her administrative appeal before filing with this Court.  Keith filed her appeal on May 13, 2013.  (Doc. 9-7.)  Keith then filed her Complaint with this Court on May 20, 2013, (docs. 1, 2), four days before the agency issued its decision on her appeal, (doc. 24-10).  In doing so, Keith provided the agency with no opportunity to address the issues contained therein or resolve her concerns without resorting to federal litigation.  The Ninth Circuit has stated that exhaustion requirements should be interpreted broadly and that plaintiffs have properly exhausted if their appeal "provided sufficient notice to the Forest Service to afford it the opportunity to rectify the violations that the plaintiffs alleged." *Native Ecosystems v. Dombeck*, 304 F.3d 886, 899 (9th Cir. 2002).  Keith afforded the Forest Service no opportunity to rectify the violations she alleges.

7

II.     **Keith's failure to exhaust should not be excused.**

Although the administrative exhaustion requirements under 7 U.S.C. §
6912(e) are not jurisdictional, compliance is required unless: "the suit alleges a
constitutional claim which is (1) collateral to a substantive claim of entitlement,
(2) colorable, and (3) one whose resolution would not serve the purposes of
exhaustion." *McBride Cotton & Cattle Corp. v. Veneman*, 290 F.3d 973, 980 (9th
Cir. 2002). No such showing was made here. However, Keith argues that
exhaustion should be excused as futile. *See Aleknagik Natives, Ltd. v. Andrus*, 648
F.2d 496, 499 (9th Cir. 1980) (finding plaintiffs need not exhaust administrative
remedies when doing so would be futile).

Futility has been much more narrowly defined by the Ninth Circuit than
Keith recognizes. As noted by the Court in *McBride Cotton & Cattle Corp.*, "[t]he
purpose of exhaustion is to allow the agency, in the first instance, to develop a
detailed factual record and utilize its expertise in applying its own regulations to
those facts." 290 F.3d at 982. Thus, in that case, the Ninth Circuit found futility
only when the agency involved "lack[ed] authority to resolve the claims presented
by the plaintiffs." *Id.* Here, there is no question that the Forest Service is the
proper agency and authority to hear Keith's claims. Keith provides no evidence

that the Forest Service would not have considered or acted upon her comments.  In

their reply brief, Defendants outline a number of comments received during the

comment period and the Forest Service's respective responses.  Defendants

contend the differences between the Draft EIS and the Final EIS demonstrate that

the Forest Service actively considered public comments and provided additional

analysis based on them.  As noted by Defendants, none of the commenters Keith

attempts to vindicate administratively appealed the Final EIS.

Keith contends that administrative exhaustion is futile because the Forest

Service has already commenced action.  According to Keith, construction of the

Jackrabbit Project has already commenced, with June 2013 marking the beginning

of Phase II and the installation of new poles directly adjacent to Keith's property.

The Ninth Circuit has found that exhaustion may be futile if the administrative

agency has already commenced an action against the plaintiff concerning the

underlying issue.  *Desert Outdoor Advert. v. City of Moreno Valley*, 103 F.3d 814,

818 (9th Cir. 1996) (holding exhaustion would have been futile in a permit action

when the city already ordered plaintiff to remove signs); *see also Randall v. U.S.*

*ex rel. Forest Serv., Dept. of Agric.*, 2010 WL 3703796 *2 (D. Nev. 2010) (finding

exhaustion futile where the Forest Service had already commenced an action for

trespass against the plaintiff for the property at issue).[1]

The primary difference between this case and those cited by Keith is that she was provided notice of the administrative process by the Forest Service and she was given an opportunity to comment before the Forest Service acted. Furthermore, such exhaustion in this instance is mandated by an exhaustion statute.

Based on the foregoing, Keith's failure to comply with the exhaustion statute is not excused.

## III.   The portions of the EIS challenged by Keith are not "obviously flawed."

Keith further contends that because the EIS is obviously flawed, she need not have preserved her arguments at the administrative level.  According to the Supreme Court, an "EA's or an EIS' flaws might be so obvious that there is no need for a commentator to point them out specifically in order to preserve its ability to challenge a proposed action."  *Dept. of Transp. v. Pub. Citizen*, 541 U.S. 752, 765 (2004).  Keith contends the Final EIS is obviously flawed because the Forest Service failed to comply with Section 106 of the National Historic Preservation Act and with the "connected" action regulation under the National

---

[1] This is the only case where 7 U.S.C. § 6912(e) applied and exhaustion was found futile.  However, the facts are distinguishable as noted above.

Environmental Protection Act.  Keith is wrong on both points.

A.    **Failure to complete § 106 Review**

Keith alleges the Forest Service failed to complete Section 106 review before it issued the Final EIS and Record of Decision.  She relies on a letter sent from the Montana Historic Preservation Office to the Forest Service in April 2013 expressing concern about a failure to consult.  (Doc. 27, Ex. 6.)  However, Defendants demonstrate that the Montana State Historic Preservation Office provided its formal concurrence with the Forest Service's decision, stating that "the proposed undertaking will have no adverse effect on historic properties located within the Area of Potential Effect []."  (Doc. 30, Ex. 2 at 1.)

Other than to reference the page in the Final EIS that states that Section 106 compliance will largely be completed before construction begins, Keth fails to make the case that the Forest Service's compliance with Section 106 is obviously flawed.  The FEIS specifically describes the historic preservation issues and includes references to tribal consultation, indicators of potential sites, scale of analysis, and the affected environment.  These considerations are all included in the regulations for implementing Section 106 review.  *See* 36 C.F.R. § 800.l *et. seq*.

As for timing, the regulations specifically state:

11

> The agency official must complete the section 106 process "prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license." This does not prohibit agency official from conducting or authorizing nondestructive project planning activities before completing compliance with section 106, provided that such actions do not restrict the subsequent consideration of alternatives to avoid, minimize or mitigate the undertaking's adverse effects on historic properties.

36 C.F.R. § 800.1.  The Record of Decision for the Jackrabbit Project indicates

that the consultation requirements for the project were met as of March 18, 2013.

(*See* doc. 4-1 at 62.)

Because the Forest Service's compliance with Section 106 of the National

Historic Preservation Act is not obviously flawed, Keith cannot overcome her

failure to exhaust with regards to that issue.

## B.  Failure to consider connected impacts

NEPA requires that a federal agency consider any connected action.  40

C.F.R. § 1508.25(a)(1).  "Connected" actions are those which: "(i) [a]utomatically

trigger other actions which may require environmental impact statements"; (ii)

[c]annot or will not proceed unless other actions are taken previously or

simultaneously"; (iii) "[a]re interdependent parts of a larger action and depend on

the larger action for their justification."  40 C. F. R. § 1508.25(a)(1).  This

requirement extends to non-federal actions undertaken exclusively by private

12

parties if the federal actions are so interrelated as to constitute "links in the same bit of chain." *Alpine Lakes Protec. Socy. v. U.S. Forest Serv.*, 838 F. Supp. 478, 482 (W.D. Wash. 1993)

In *Thomas v. Peterson*, the Ninth Circuit found that the construction of a logging road and the sale of timber were "connected" actions in that "the road would not be built but for the contemplated timber sales." 753 F.2d 754, 758 (9th Cir. 1985). However, in cases where "each [action] could exist without the other," the Ninth Circuit has found the actions are not "connected." *See N.W. Resource Info. Ctr., Inc. v. Natl. Marine Fisheries Serv.*, 56 F.3d 1060, 1068 (9th Cir. 1995). Here, the situation is more comparable to that of *Thomas.* The construction of the transmission lines on federal land and on non-federal land are interdependent parts of a larger action. Thus, these actions should be considered "connected."

The Forest Service directly responded to a comment by the EPA on these grounds. (*See* Appx. G., doc 27-2 at 6.) The Forest Service notes that it "made changes in the FEIS to ensure the Forest Service considered in some detail the impacts associated with the entire transmission Project. Several updates were made to the cumulative effects analysis, including water resources, human health and safety, and transportation and traffic." (*Id.*) The Forest Service's comments demonstrate it considered the cumulative impacts of the "connected" action on

13

non-federal land.  Thus, the EIS is not so obviously flawed as to excuse Keith's

failure to exhaust.

### CONCLUSION

For the reasons stated the Defendants' motion to dismiss for failure to

exhaust administrative remedies (doc. 22) is GRANTED.

The Clerk is directed to enter judgment in favor of the Defendants and

against Plaintiff, and to notify the parties of the entry of this order and judgment.

Dated this 1st day of October, 2013.

DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT